***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Jones. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives; therefore, the Full Commission AFFIRMS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pretrial agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. A Form 22 was submitted from which an average weekly wage may be determined.
4. The parties have stipulated as to documentation relating to depositions of Wendy Drake and La Shaun A. Douglas.
5. The issues before the Full Commission are: (i) whether plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer on December 28, 1999; (ii) if so, what compensation, if any is due plaintiff; (iii) if plaintiff sustained a compensable injury by accident, who is liable for the workers' compensation; and (iv) whether plaintiff is entitled to reasonable attorneys fees pursuant to N.C.G.S. § 97-88.1.
6. The depositions of Jewell Bean, La Shaun Douglas, Wendy Drake, Bonnie Nihoa (Hill), Mike Mcaden, Teri Tollefson and James Markworth, M.D. are a part of the evidentiary record in this matter.
 ***********
Based on the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the deputy commissioner hearing in this matter, plaintiff was thirty-eight (38) years old. Plaintiff completed high school and training as a mechanic.
2. Plaintiff began working for defendant-employer in November 1992; however, there were intervals in which plaintiff did not work for defendant-employer since that time. Defendant-employer is in the business of household moving and plaintiff's job duties included loading and unloading household goods. Plaintiff would usually be working with a crew of two or three people.
3. On December 28, 1999, plaintiff was unloading a headboard when he twisted his back while holding the headboard and felt low back pain. Plaintiff reported the incident to his supervisor, Allen Bradley, and continued to work his regular job.
4. Following the incident, plaintiff's lower back pain gradually increased. By January 14, 2000, plaintiff began experiencing pain down his right leg.
5. On January 24, 2000, plaintiff told his supervisor, Allen Bradley, that he was unable to work and required medical treatment. Defendant-employer referred plaintiff to Onslow Doctors' Care. Onslow Doctors' Care referred plaintiff to an orthopedic surgeon; defendant-employer approved this referral.
6. On January 24, 2000, plaintiff was examined by orthopedic surgeon Dr. James Markworth. At this visit, plaintiff indicated to Dr. Markworth that he had injured his back at work and Dr. Markworth reported the date of injury as January 14, 2000. Dr. Markworth recommended conservative treatment and work restrictions stating "essentially he is going to have to be working in the office if possible."
7. Plaintiff was again evaluated by Dr. Markworth on January 31, 2000. At this visit, plaintiff indicated he was still in pain and Dr. Markworth ordered an MRI. At this time, Dr. Markworth also notated in his medical records that plaintiff's injury occurred on December 28, 1999.
8. An MRI was performed on plaintiff on February 4, 2000 which indicated he had disc herniations at L4-5 and L5-S1. In light of the MRI findings, Dr. Markworth recommended surgery to resolve plaintiff's back pain and leg pain.
9. Dr. Markworth determined the herniated disc at L4-5 was associated with plaintiff's injury by accident on December 28, 1999; however, he was unable to state with certainty that the herniated disc at L5-S1 was associated with the injury by accident.
10. Plaintiff continued to work for defendant-employer from December 28, 1999 through March 7, 2000 when he entered the hospital for surgery. Defendant-employer continued to pay plaintiff his full salary through April 6, 2000.
11. On March 8, 2000, plaintiff had a laminotomy and foraminotomy on the right side at spinal level L4-5. After plaintiff returned home from his surgery, plaintiff was contacted by his supervisor, Allen Bradley, and told defendant-employer would file charges against him unless he changed the reported date of his work-related injury from December 28, 1999 to January 14, 2000.
12. Dr. Markworth continued to treat plaintiff after his back surgery. On May 1, 2000, Dr. Markworth felt plaintiff had reached maximum medical improvement with regard to his surgery and released him to return to work but recommended plaintiff not return to his former employment as a furniture mover. At this visit, Dr. Markworth gave plaintiff the following work restrictions: no driving more than two (2) hours without rest; avoid heavy lifting greater than thirty (30) pounds; avoid prolonged sitting or standing; avoid bending and twisting from the waist.
13. On July 3, 2000, Dr. Markworth gave plaintiff a three percent (3%) permanent partial disability rating of his back.
14. Plaintiff returned to work for defendant-employer on May 11, 2000 following his release to return to work with restrictions by Dr. Markworth. Plaintiff worked in inventory control on a part time basis, twenty (20) hours per week, through September 27, 2000 except for July 20-24, 2000 and July 28-31, 2000 when Dr. Markworth took him out of work due to a temporary aggravation of his back pain.
15. Plaintiff did not work for defendant-employer after September 27, 2000.
16. Plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer on December 28, 1999.
17. Plaintiff underwent a Functional Capacity Evaluation on June 26, 2001. It was determined plaintiff should not return to his prior work and plaintiff's final work restrictions are contingent upon his treating physician reviewing the Functional Capacity Evaluation results.
18. Plaintiff's average weekly wage as calculated by the Industrial Commission based upon the Form 22 Statement of Days Worked and Earnings of Injured Employee that is a part of the evidentiary record in this matter is $316.30 resulting in a weekly compensation rate of $210.88.
19. Defendant-employer has a very poor history of paying insurance premiums and on numerous occasions, payments were late. Each time the employer was late with payments, the insurance carrier would send a cancellation notice. After receiving the cancellation notice, the employer would pay his premiums before the cancellation date except in January 1999 when the premium was received after the cancellation date. In this instance, the payment was also postmarked after the cancellation date.
20. Each time defendant-employer paid its premiums prior to the cancellation date or by letter posted marked prior to the cancellation date, the insurance policy was reinstated.
21. Defendant-employer received a notice that its premium was late for September 1999. Defendant-employer was notified the cancellation date would be effective November 1, 1999. On October 19, 1999, La Shaun Douglas, an audit specialist with the insurance carrier tried to contact the employer concerning a late payment. Ms. Douglas was unable to reach the employer because she had the incorrect phone number; however, she made the additional effort of contacting the insurance agent to obtain the defendant-employer's correct phone number.
22. On October 27, 1999, Ms. Douglas contacted Charlotte, a person at the employer's office. Charlotte informed Ms. Douglas a check had already been prepared and would be mailed. Mr. Douglas reminded her it would have to be received before the cancellation date.
23. The insurance carrier did not receive payment of the insurance premiums before November 1, 1999. Defendant-employer's insurance policy was cancelled and the coverage lapsed.
24. On December 8, 1999, the insurance agent sent a note by facsimile to the insurer requesting the insurance policy be reinstated. The insurance company indicated by note the policy had been cancelled and returned it by facsimile to the insurance agent.
25. On December 16, 1999, the insurance company received a check from defendant-employer purporting to be payment for the past two (2) insurance premiums. This check was returned to the employer and the insurance agent was notified the cancelled insurance policy would not be reinstated. A new policy would have to be written.
26. On January 4, 2000, a new insurance policy was written becoming effective on January 5, 2000.
27. Defendant-employer was without workers' compensation insurance from November 1, 1999 through January 4, 2000.
28. Plaintiff was not aware that defendant-employer's workers' compensation insurance coverage had lapsed until the day before his surgery on March 8, 2000.
29. Defendant-employer had no workers' compensation insurance at the time of the accident nor on the date of the deputy commissioner hearing in this matter, May 8, 2001. Defendant-employer has demonstrated a deliberate pattern of willful failure to have workers compensation coverage warranting referral of defendant-employer to the North Carolina Industrial Commission Fraud Investigations Section for further investigation.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On December 28, 1999, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C.G.S. § 97-2(6).
2. In as much as defendant-employer continued plaintiff's salary for a period of more than ninety (90) days following his date of injury without filing Form 63, Notice to Employee of Payment of Compensation WithoutPrejudice, defendants have admitted compensability of plaintiff's claim.N.C.G.S. § 97-18(d).
3. As result of plaintiff's compensable injury by accident on December 28, 1999, plaintiff was totally disabled from March 8, 2000 through May 10, 2000, July 20-24, 2000, and July 28-31, 2000. Plaintiff is further entitled to total disability compensation from September 28, 2000 and continuing until further order from the Commission. N.C.G.S. § 97-29.
4. Plaintiff is entitled to temporary partial disability compensation from May 11, 2000 through September 27, 2000 excluding the dates infra which he was eligible to receive total disability compensation. N.C.G.S. § 97-30.
5. Plaintiff is entitled to receive medical treatment for his compensable injury by accident on December 28, 1999 so long as said treatment effectuates a cure, gives relief and/or lessens plaintiff's period of disability. N.C.G.S. § 97-25.
6. Defendant-employer shall receive a credit for the salary paid plaintiff through April 6, 2000. N.C.G.S. § 97-42.
7. Defendant-employer failed to have valid workers' compensation insurance for the period of November 1, 1999 through January 4, 2000 and is subject to a maximum penalty of $100.00 per day for this statutory violation. N.C.G.S. §§ 97-93, 97-94.
8. Defendant-employer having been found liable to continue payment of benefits following their appeal of this matter is responsible for payment of the costs of these proceedings including a reasonable attorney fee for plaintiff's counsel; however, defendant-employer has not defended this action without merit. N.C.G.S. §§ 97-88, 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. For his total disability, plaintiff is entitled to receive total disability compensation in the amount of $210.88 per week from March 8, 2000 through May 10, 2000, July 20-24, 2000 and July 28-31, 2000 and from September 28, 2000 and continuing until further order from this Commission. Defendant-employer is entitled to a credit for the salary paid until April 6, 2000. This amount which has accrued to date shall be paid in a lump sum subject to an attorney's fee approved in Paragraph 4.
2. Plaintiff is entitled to receive temporary partial disability compensation from May 11, 2000 through September 27, 2000 in the amount of two-thirds of the difference between his wages earned during this period and his pre-injury average weekly wage excluding the dates infra for which he was eligible to receive total disability compensation. This amount shall be paid in a lump sum subject to an attorney's fee approved in Paragraph 4.
3. Defendant-employer shall pay all medical expenses resulting from plaintiff's compensable injury by accident on December 28, 1999.
4. A reasonable attorney's fee of twenty-five (25%) percent of compensation due plaintiff under Paragraphs 1 and 2 of this Award is approved for plaintiff's counsel and shall be paid as follows: twenty-five (25%) percent of lump sum due plaintiff under Paragraphs 1 and 2 of this Award shall be deducted from that sum and paid directly to plaintiff's counsel. In regards to all future compensation, plaintiff's counsel shall receive every fourth check.
5. Defendant-employer shall pay a penalty in the amount of $100.00 per day totaling $6,500.00 for the period of November 1, 1999 through January 4, 2000 for failure to have workers compensation insurance during this time. This check shall be payable to the North Carolina Industrial Commission.
6. Defendant-employer shall pay the costs of this action and remit to plaintiff's counsel an attorney fee in the amount of $750.
It is also ORDERED that this case is hereby referred to the Fraud Investigations Division for investigation of any other violations by defendant-employer in violation of the Workers Compensation Act.
This the ___ day of August 2002.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER